THE PEOPLE *ex rel*. Chicago Bar Association, Relator, *vs*.
MASON A. BAMBOROUGH *et al*. Respondents.

*Opinion filed June 21, 1912—Petition for rehearing withdrawn.*

ATTORNEYS AT LAW—*attorney who seeks to appropriate client's money by charging exorbitant fee should be disbarred.* While a mere dispute between attorney and client over the amount which the attorney in good faith claims to be due him as fees is not ground for disbarment, yet if it appears that the amount claimed is exorbitant in view of the services rendered and that the claim that it is for fees is a mere pretext to enable the attorney to appropriate a large share of the client's money in his hands, making it necessary for the client to employ other attorneys to recover the money by suit, the attorney should be disbarred.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

ROSENTHAL & KURZ, for respondents.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an information filed in this court upon the relation of the grievance committee of the Chicago Bar Association, in the name of the People, against Mason A. Bamborough and Albert F. Brown, who are regularly licensed attorneys of this court and who were practicing their profession as partners in the city of Chicago at the time the information was filed, for the purpose of disbarring said Bamborough and Brown and having their names stricken from the roll of attorneys of this court on the ground of professional misconduct in unlawfully retaining in their hands, as attorneys' fees, funds which they had collected for Louise M. Colekin, their client, and refusing to pay the same to her until after she had recovered judgment therefor against them. An answer was filed and the proceeding was referred to a commissioner to take the proofs and report his conclusions to this court. The com-

missioner took the evidence of the parties and filed a report, in which he found that the respondents had retained as attorneys' fees out of funds which they had collected for their client, Louise M. Colekin, an unreasonable amount, but held that under all the circumstances shown by the evidence the respondents ought not be disbarred, and recommended that the rule to show cause be discharged. The relator has excepted to the commissioner's report.

The facts involved are brief and are not in dispute. In the month of February, 1907, Louise M. Colekin, who resided in the city of Chicago, received information that Helen M. Colekin, of London, England, a relative of her deceased husband, had died on January 23, 1907, and, as she was informed, had left a legacy to her or her daughter, Mabel Colekin. With a view to investigating the matter Mabel Colekin called upon the respondent Albert F. Brown, whom she and her mother had known for some time, at the office of Bamborough & Brown, in the city of Chicago, and afterwards Louise M. Colekin retained Bamborough & Brown to represent her in collecting the legacy which was given her under the will of Helen M. Colekin, deceased. During the month of March, 1907, the respondents wrote to LeBrasseur & Oakley, solicitors of London, England, relative to the rights of Louise M. Colekin in the estate of Helen M. Colekin, deceased, and within a few weeks received a reply from LeBrasseur & Oakley that Louise M. Colekin was a legatee under the will of said Helen M. Colekin, deceased, and would on the settlement of her estate receive about $3500, and asked, if they were to represent Louise M. Colekin, that the respondents forward them proof of her identity and a power of attorney authorizing them to receive and receipt for said legacy in her name. The necessary papers were prepared by the respondents and were executed and forwarded to the London solicitors, and in the month of November, 1907, LeBrasseur & Oakley collected from the executor of Helen

M. Colekin the amount of the legacy due Louise M. Cole-
kin, and, after deducting $65 as their fee and expenses,
remitted to the respondents, by draft, the sum of $3482.59,
the same being the amount due Louise M. Colekin after
deducting the fee and expenses due LeBrasseur & Oakley.
On receipt of the amount of the legacy due Louise M.
Colekin, the respondents notified her by telephone that the
amount of her legacy had been received by them and for
her to call and receive the same. She called the next day.
As she left the elevator on the floor of the building in
which the office of respondents was located she met the
respondent Bamborough leaving his office. He remarked
to her that the stenographer had a statement of her ac-
count and a check for the amount which was due her, and
for her to call on the stenographer and receive the same.
When she entered the office she was handed by the sten-
ographer a statement in writing showing the receipt of
$3482.59 by respondents in full of her legacy under the
will of Helen M. Colekin; also showing disbursements by
the respondents and loans advanced to her amounting to
the sum of $313.69, the amount of $1000 as the attorneys'
fees of the respondents, and a check for $2168.92, which
represented the net balance due her on her legacy. She
had no contract with respondents as to the amount of their
fees and was dissatisfied with the amount of the fee. She
remained in the office until Bamborough came back, when
she returned the statement and the check to him and de-
clined to settle with the respondents on the basis of the
statement or to receive in full payment of her legacy said
check. Brown was out of the city, and on his return, after
some controversy with him, she received the check under
protest and deposited the same for collection in a bank,
and thereafter employed other attorneys and brought suit
against the respondents to recover the $1000 retained by
them as attorneys' fees, less the amount of their reasonable
fees. She recovered a judgment, after two trials before a

jury in the municipal court, for $775 against the respondents, which was paid by Bamborough after the judgment had been affirmed by the Appellate Court.

It is claimed by the respondents that they spent a great deal of time in looking up the law pertaining to the collection of the said legacy and in advising with their client in regard to her rights relative to a contest which they say she feared might be instituted to set aside the will of Helen M. Colekin. We think these claims are without foundation, as the London solicitors notified the respondents at once upon being consulted that their client was a legatee of Helen M. Colekin, the approximate amount of her legacy and that it would be paid to her within a year. The respondents prepared proof of identity of Louise M. Colekin, (which, as we understand the record, consisted of her affidavit,) a power of attorney, wrote a few letters to LeBrasseur & Oakley and sent two cablegrams to them, and this was all the service they performed toward the collection of said legacy. The evidence establishes, without contradiction, that $225,—the amount allowed for the services of the respondents by the municipal and Appellate Courts,—was ample compensation for the services performed by them in collecting the legacy of Louise M. Colekin. The London solicitors did substantially all of the work that was performed in collecting the legacy, and they made a charge, including their expenses, of $65. It therefore stands uncontradicted upon this record that the respondents made an overcharge of $775 against Louise M. Colekin for collecting her legacy, and put her to the delay and vexation of two trials before a jury in the municipal court and an appeal to and trial in the Appellate Court before she received from the respondents the amount of her legacy which they had collected and unlawfully withheld from her.

Section 7 of chapter 13 of the Revised Statutes, entitled "Attorneys and Counselors," provides that if an at-

torney at law or solicitor in chancery shall, upon demand, refuse or neglect to pay over or deliver to his client, upon the tender to him of his reasonable fees and expenses, any money or property which he shall have received in his capacity of attorney or solicitor upon any claim left with him for collection or settlement, his client may apply to this court for a rule upon said attorney or solicitor to show cause why he should not be disbarred, and if, in answer to a rule to show cause, it shall appear that such attorney or solicitor has improperly refused or neglected to pay over or deliver said money or property, on demand, to his client, it shall be the duty of this court to strike his name from its roll of attorneys. It is apparent from this section of the statute that it was the legislative intent that no attorney at law or solicitor in chancery in this State should be permitted to continue the practice of his profession when it appears that he has been guilty of unlawfully withholding from his client money or property which he has collected or received for his client. The relation existing between attorney and client is a confidential one, and when an attorney gets the money or property of his client into his hands, he cannot, in a disbarment proceeding, justify its retention under the pretense that he is holding it as fees, when, as here, it clearly appears the amount claimed for fees is unreasonable and extortionate. In *People* v. *Stirlen,* 224 Ill. 636, the respondent was disbarred for misappropriating funds belonging to a client under the pretension of having applied them upon fees due him for professional services. As was said in that case, an attorney or solicitor should not be disbarred simply because he gets into a dispute with his client over fees, or for withholding funds which he has collected and which he seeks to apply in good faith on an account for legal services; but when it is shown, as it was in the *Stirlen case,* and when it appears, as it does here, that the claimed application of the funds collected in payment of fees is a clear overcharge, and

that such overcharge was made solely for the purpose of permitting the attorney to appropriate to his own use the funds of his client in his hands under the guise of retaining them for fees, the attorney or solicitor guilty of such misconduct should be disbarred and thereafter deprived of the power, under the license of this court, to impose upon other clients.

The evidence shows the respondent Brown was a friend of Louise M. Colekin and her daughter, and that Louise M. Colekin had all her dealings with reference to the collection of said legacy with Brown, and that while Bamborough was conversant with the fact of the extortionate overcharge, all he had to do with the transaction was that he knowingly participated with Brown in the division of the fee which Brown deducted from the legacy of Louise M. Colekin. After this proceeding was commenced Brown left the jurisdiction of this court and is now in the Dominion of Canada. So soon as the judgment against the respondents in favor of Louise M. Colekin was affirmed by the Appellate Court Bamborough paid the judgment, and after the commissioner's report was filed recommending that the rule be discharged, Bamborough voluntarily repaid to Louise M. Colekin the expenses she had incurred in the municipal and Appellate Courts not taxed as costs, such as attorneys' fees and printing briefs, which expenses aggregated about $300. The relation of Bamborough to the case as disclosed by the evidence, and the fact that he reimbursed Louise M. Colekin for the expenses incurred in collecting the money unlawfully withheld from her by the respondents, we think in some degree should mitigate the offense of the respondent Bamborough, but we are not impressed with the view that he is entitled to have the rule heretofore entered against him discharged. The conduct of Brown is, however, reprehensible in the extreme and without excuse, and in our judgment merits disbarment.

It is therefore ordered that the name of Albert F. Brown be stricken from the roll of attorneys of this court and he be disbarred from further practicing the profession of law, and the respondent Mason A. Bamborough be suspended from practicing as an attorney at law or solicitor in chancery under the license heretofore issued to him by this court, for the period of one year from this date and until the further order of this court, and the respondents are directed to pay the costs of this proceeding.

> *Rule made absolute as to Albert F. Brown.*
> *Mason A. Bamborough suspended for one year.*