(No. 12059.—Rule made absolute.)

THE PEOPLE ex rel. The Chicago Bar Association, Relator, vs. MORRIS LOEFF, Respondent.

*Opinion filed February 18, 1920—Rehearing denied April·7, 1920.*

DISBARMENT—*refusal or failure to return client's money justifies disbarment.* An attorney who uses his client's money and refuses or fails to return it when called for may be disbarred, and he will not be allowed to justify his acts by a claim for fees to which he is not entitled.

INFORMATION to disbar.

JOHN L. FOGLE, FRANCIS X. BUSCH, and ELMER E. LEESMAN, for relator.

WILLIAM S. STAHL, (E. M. SEYMOUR, of counsel,) for respondent.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an information on the relation of the Chicago Bar Association for the disbarment of Morris Loeff.

The information contains two counts. The first alleges, in substance, that about June 5, 1915, Charles A. Riehm was by the circuit court of Cook county appointed receiver of certain improved real estate then in litigation; that from time to time after his appointment he collected rents on the property, amounting on the ·10th day of March, 1917, to $678.52, all of which he turned over to respondent to hold as trustee until it became necessary to make a report as receiver; that it became necessary in the year 1917 for Riehm to make a report as receiver; that he notified respondent and requested him to prepare the report and make an accounting of the money collected by the receiver and turned over to respondent for safe keeping but that respondent has failed to do so. The count further avers that March 12, 1917, the circuit court entered an order of distribution, re-

quiring Riehm, as receiver, to pay the sum of $331 to certain owners of the property; that upon being advised of the entry of said order Riehm demanded that respondent turn over to him the money in order that he might comply with the order of the court but respondent failed to do so or to make an accounting with the receiver.

The second count alleges that March 8, 1917, respondent was employed by Samuel Paul as attorney to secure the return to him of a certain apprentice certificate then in the possession of the State Board of Pharmacy and also to settle certain differences between one Massarek and Paul; that at the time of the employment Paul paid respondent $300, for which respondent gave the following receipt and contract:

"MORRIS LOEFF, ATTORNEY AT LAW,
Room 1105 Fort Dearborn Bldg., 105 W. Monroe St.
CHICAGO, *3/8, 1917.*

"Received of Samuel Paul two hundred dollars ($200) as a fee for services to be rendered to procure the apprentice certificate which is now in the possession of the board of pharmacy, also settle any differences between Massarek and Paul, procure a release from Massarek and Green Detective Agency. In the event of failure to do so two hundred dollars to be returned to said Paul.

"It is also understood that one hundred dollars ($100) having been paid to me for services rendered, said amount to be retained by me independent what the outcome of procuring the above certificate or said release of said Massarek may be.

MORRIS LOEFF."

The count further alleges respondent did not make any *bona fide* effort to perform the services he agreed to perform, whereupon Paul demanded the return of the money paid him; that the demand was made about June 1, 1917; that respondent admitted he had not performed the service agreed upon and induced Paul to permit him to retain $100 and agreed to return $200 to Paul, at the same time stating that he (respondent) was not able then to pay the $200 and asked for further time. Thereafter, from time to time, Paul made demand upon respondent for payment of said $200 but he has not paid the same.

Respondent's answer to the first count avers he had been representing Charles A. Riehm in various business and legal matters for seven years and denies he failed or refused to account for the money turned over to him by Riehm as receiver, and alleges for a period of five years he had from time to time advanced Riehm various sums of money and rendered legal services for which there has been no accounting. Respondent answering the second count admits his employment by Paul, which employment he avers was to settle certain differences between the State Board of Pharmacy charging Paul with fraud in procuring an apprentice certificate, and to settle certain differences between Massarek and Paul which arose out of a discovery by Massarek that Paul had embezzled a large amount of money, for which he threatened to prosecute Paul. The answer avers that at the time of the employment respondent was not informed the apprentice certificate was obtained by fraud but was informed of that fact when he called at the office of the State Board of Pharmacy; that in an interview with Massarek the respondent was shown a signed confession by Paul of the embezzlement of $300 while in Massarek's employment. The answer further avers that respondent was instrumental, by the use of moral persuasion, in inducing the State Board of Pharmacy and Massarek not to prosecute Paul. Respondent denies he agreed to return Paul $200, and claims he has earned the money by his labor in inducing the board of pharmacy and Massarek not to prosecute Paul.

The commissioner to whom the case was referred heard the evidence and reported that it sustained both counts, and recommended that respondent's license be revoked and his name be stricken from the roll of attorneys.

Respondent has attempted to bring into the hearing numerous other matters and transactions growing out of his relations with Riehm, the only effect of which is to becloud the real issue made by the first count. The proof shows

Riehm was appointed receiver June 5, 1915, collected rents and turned them over to respondent for safe keeping to the amount, as found by the commissioner, of $678.52. The property for which Riehm was appointed receiver belonged to him and his two brothers, John and Anton. The brothers had brought a suit for partition, and respondent, representing C. A. Riehm, had procured his appointment as receiver pending the partition suit. Riehm finally purchased his brothers' interest in the property and it was never sold at partition sale. Riehm was not a business man but depended solely upon respondent to attend to the matter for him. It required orders of court that a report and accounting be filed by the receiver by a day named, rule to show cause why the order had not been complied with, and notice that an attachment for contempt would be applied for, to finally get a report filed. Riehm knew nothing of the orders and rule but respondent was informed of them. Finally respondent filed a report and account for the receiver, and as a result of an agreement between respondent and the attorneys for John and Anton Riehm an order was entered discharging the receiver. Without going into details, it is sufficient to say that C. A. Riehm never has received $110 due him on rents he collected and turned over to respondent. At the hearing before the commissioner respondent claimed that amount was due as fees for his services, but the commissioner found from the evidence that respondent had agreed with Riehm he would not charge him fees for services in connection with the partition suit and the property of which Riehm was receiver, and in our opinion the commissioner's findings and conclusion in this respect are sustained by the testimony. Riehm testified respondent said the use of the money would pay him for all his services in the premises and that he would charge no fee. This was disputed by respondent, his brother and another witness, but in our opinion the evidence justified the commissioner's conclusion that Riehm's testimony was true. It is surprising

how a small matter like the receivership and a few hundred dollars rents collected can become so complicated as is in this case shown by this record. It all comes from respondent keeping all the money and refusing to make any report or account of it until compelled by order of the court and then attempting to hold onto as much of it as he could. He finally succeeded in retaining $110 which belongs to C. A. Riehm. If respondent had shown the energy and resourcefulness in promptly and honestly discharging his duties in the premises that he has shown in trying to justify his conduct, it would have been a very simple matter to have satisfactorily explained the charges against him in the information. No one can read this record without being convinced that respondent has not acted honestly and in good faith in this matter but has appropriated his client's money.

Respondent's explanation of the charge in the second count is, that through his instrumentality and moral persuasion the State Board of Pharmacy has not prosecuted Paul for forgery in obtaining an apprentice certificate and Massarek has not prosecuted him for embezzlement, although neither has entered into any agreement to that effect. He has never procured the apprentice certificate from the board of pharmacy for Paul. By his contract he was to receive $100 for his services whether he procured the certificate and the release from Massarek or not, and if he failed to procure the certificate and the release, $200 of the money paid him by Paul was to be returned. Respondent has not complied with the terms of his agreement. Conceding, as is claimed by the respondent, that Paul's conduct has been criminal, this would not justify respondent in refusing to perform his agreement. Whatever Paul's character may be, respondent agreed if he did not procure the return of the apprentice certificate to him and a release from prosecution by Massarek he would return to Paul the $200. We agree with the commissioner that no excuse is shown for refus-

ing to return the $200. When an attorney uses his client's money and refuses or fails to return it when called for, his conduct justifies disbarment. (*People* v. *Pattison,* 241 Ill. 89; *People* v. *Holt,* 279 id. 107.) He will not be allowed to justify his acts by a claim for fees to which he is not entitled. *People* v. *Bamborough,* 255 Ill. 92.

The evidence, according to the rules of practice in such cases, (*People* v. *Stonecipher,* 271 Ill. 506,) supports the report and conclusions of the commissioner and the rule against respondent will be made absolute. His name is ordered stricken from the roll of attorneys.

*Rule made absolute.*

---

(No. 12770.—Reversed and remanded.)
Aᴅᴀᴍ MᴄCʀᴀʏ *et al.* Appellants, *vs.* Tʜᴇ Cɪᴛʏ ᴏꜰ Cʜɪᴄᴀɢᴏ *et al.* Appellees.

*Opinion filed February 18, 1920—Rehearing denied April 7, 1920.*