(No. 14361.—Rule discharged.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* JAMES PERCIVAL PIO, Respondent.

*Opinion filed April 18, 1923.*

1. DISBARMENT—*when findings of commissioner are conclusive.*
Where the findings of the commissioner in a disbarment proceeding are in favor of the respondent and the relator has filed exceptions but has not brought to the Supreme Court the evidence heard by the commissioner the findings as to the matters of fact are conclusive, and the only question for the Supreme Court is whether the facts found warrant the conclusion of law that the respondent's name should be stricken from the roll.

2. SAME—*an attorney should not over-charge client of limited means.* In making his charges an attorney should take into consideration the financial standing of his client, and where it appears that the client is without means and without the ability to earn more than ordinary wages the charges should be small compared with those usually charged for similar services.

3. SAME—*proof of an attorney's misconduct in practicing fraud must be clear and satisfactory.* To warrant disbarment on the ground of misconduct accompanied with fraudulent and dishonest motives the proof must be clear and satisfactory, particularly where the misconduct consists in charging a fee which, though unreasonable when the client's means are considered, is not exorbitant or unusual.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

WARREN B. WILSON, for respondent.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

An information to disbar James Percival Pio was filed in this court, averring that he was admitted to the bar on October 4, 1911, and that since that time he has been practicing in the city of Chicago. It charges that Karolina Li-

pina, who had filed her bill for divorce in the superior court of Cook county, employed respondent to represent her; that she paid respondent $25 with the understanding and agreement that he would conduct said proceeding to a decree without further cost to her and secure the payment of such additional fees as the court would allow, from the defendant; that respondent procured an order requiring the defendant to pay $35 solicitor's fees and $7 a week temporary alimony; that the Lipinas had saved from their earnings about $1140, which was on deposit in a Chicago bank; that respondent procured an order of court directing that $540 of this deposit be paid to the complainant; that a cashier's check for that amount was issued to her; that respondent by misrepresentations procured her indorsement on the said check and procured the delivery of the check to him in exchange for his check for $300, which he falsely represented as the full amount of the check made payable to her; that he paid $35 to an attorney representing the bank and that he retained and converted to his own use the sum of $205; that when the final decree was entered and the court was considering the proper amount to be fixed as solicitor's fee he fraudulently concealed from the court that he had received $230 from the complainant; that the court fixed as a reasonable solicitor's fee $100, and directed that said amount be paid to complainant by defendant, and that the balance of the money on deposit in the bank be paid to complainant to cover arrears of alimony and solicitor's fees; that respondent requested complainant to pay him an additional $100 as fees, and upon her refusal to do so served notice of an attorney's lien on the bank. Respondent answered, saying that the first payment of $25 was for a preliminary examination and investigation of the case, and that it was not understood or agreed that he would not demand further fees from complainant for his services; that he did procure an order directing the withdrawal of $540 from the joint bank account for the benefit of complainant; that

the withdrawal receipt and cashier's check were drafted by an officer of the bank in the presence of complainant; that the officer fully explained the character and amount of the same to her; that she examined the same and indorsed the cashier's check to respondent with full knowledge of the amount thereof; that she agreed that $300 should be delivered to her and that $240 should be retained by respondent, $35 of which he was to pay to the bank's attorney; that his total charges to her were $385, which was no more than the amount set out in the schedule of charges promulgated by the Illinois State Bar Association for such services; that he has received $265 of said sum and no more; that he has at no time made any misrepresentations to complainant or to the court, and that he has not converted to his own use any money except that retained by him with the consent and approval of complainant. His answer states that he was necessarily in attendance in court regarding the litigation on eleven different occasions, and sets out the dates of the appearances and the business transacted. The cause was referred to a commissioner to take the evidence and report the same to this court, together with his findings of fact and conclusions of law. This report has been filed, and the relator has filed exceptions to the report.

The commissioner reports that Karolina Lipina speaks the Polish language and does not speak English; that she consulted respondent through an interpreter, and told him that attorneys theretofore employed by her to secure a divorce were unsatisfactory and that she wanted him to take charge of her case; that she employed respondent to examine the files and investigate the case and paid him $25 for this service; that the examination was made and that the charge of $25 for these preliminary services was a reasonable and proper charge; that a second conference was held and the case was fully discussed; that respondent told her that he could secure an order of court requiring her husband to pay temporary alimony and solicitor's fees; that

there was no agreement that respondent should receive no compensation except that allowed by the court; that there was no definite contract regarding the amount of fees or the manner of payment of the same; that respondent appeared in court and secured the order for temporary alimony and solicitor's fees; that after many conferences with the attorney for the defendant he secured a further order directing the withdrawal of $540 of the joint funds in the bank for the benefit of complainant; that the parties interested met at the bank; that a withdrawal slip was prepared in the presence of complainant and signed by her; that no misrepresentations were made to her by respondent or anyone else; that nothing was said that would lead her to believe that an amount less than $540 was withdrawn, and that she was informed that the amount withdrawn was $540; that the amount was paid to her by cashier's check, with an explanation to her that it was safer to carry than currency; that the check was handed to her and taken away by her unindorsed; that she returned to respondent's office by appointment; that respondent explained to her that he had agreed to pay the bank's attorney $35; that he would take $205 to apply on his fees and that he would pay to her $300, and asked her to indorse the cashier's check and deliver it to him; that she did indorse the check and deliver it to him; that she knew the check she indorsed was for $540, and that while there was no arrangement made fixing the amount to be charged by respondent, she expected to pay him a reasonable amount; that respondent had many conferences with defendant's solicitors; that he appeared in court many times; that these appearances were necessary and that the results secured were entirely satisfactory to complainant; that respondent has received as fees a total of $250 and that he claims a balance due him of $75; that the charges are not exorbitant for the work shown by the evidence to have been necessarily performed; that respondent did not make a full disclosure to the court of all his

transactions with complainant, but that there is no evidence of an intent to deceive the court; that respondent's good character and professional reputation have been proven by the testimony of a judge of the superior court of Cook county and of a master in chancery of said court; that the suit was skillfully handled and complainant's interests were properly served; that in view of the illiteracy of complainant, respondent should have made clear to her either the exact amount he would charge for his services or the exact basis on which his charges would be figured, and that under the circumstances his manner of dealing with complainant lacked that element of frankness that should always prevail between attorney and client.

The relator has filed exceptions but has not brought to this court the evidence, and so the findings of the commissioner as to matters of fact are conclusive. · The only question presented for our consideration is whether the facts found warrant the conclusion of law that the respondent's name should be stricken from the roll of attorneys. (*People* v. *Gilbert,* 263 Ill. 85.) Relator argues that respondent's claim for fees is a clear overcharge, and that such overcharge was made solely for the purpose of permitting him to appropriate to his own use the funds of his client under the guise of retaining them for fees. If the facts found supported this argument we would disbar respondent. (*People* v. *Bamborough,* 255 Ill. 92.) The commissioner has found that the amount claimed as fees by respondent, in view of the services rendered, is not exorbitant, and from what appears in his report we are not prepared to say that his finding is not justified. In making his charges an attorney should take into consideration the financial standing of his client, and where it appears, as it does in this case, that the client is without means and without the ability to earn more than ordinary wages, the charges should be small compared with those usually charged for similar services. We consider respondent's charge unreasonable in

view of all the circumstances of this case, but taking into consideration his good reputation at the bar, established by the uncontradicted testimony of a judge of the superior court and one of its officers, we are not justified in striking the name of respondent from the roll of attorneys. To justify such action on our part, proof of misconduct accompanied with fraudulent and dishonest motives must be clear and satisfactory. *People* v. *Barrios*, 237 Ill. 527; *People* v. *Lasley*, 302 id. 595.

The rule is discharged.

*Rule discharged.*